Robert P. Schuster
(*Pro Hac Vice* Applicant)
Wyoming Bar No. 4-1137
Bradley L. Booke
(*Pro Hac Vice* Applicant)
Wyoming Bar No. 5-1676
ROBERT P. SCHUSTER, P.C.
P.O. Box 13160
Jackson, Wyoming 83002
Telephone: 1.307.732.7800
bob@bobschuster.com
brad@bobschuster.com

Gary L. Shockey
(*Pro Hac Vice* Applicant)
Wyoming Bar No. 5-1538
GARY L. SHOCKEY, P.C.
951 Werner Court, Suite 340
Casper, Wyoming 82609
Telephone: 1.307.699.8060
gary@garyshockeylaw.com

Dennis P. Wilkinson
Idaho Bar No. 6023
SMITH WOOLF ANDERSON
& WILKINSON, PLLC
3480 Merlin Drive
Idaho Falls, Idaho 83404
Telephone: 1.208.525.8792
dennis@eastidaholaw.net

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **CHARLES J. SPENCER and TONI A. SPENCER,**<br><br>    **Plaintiffs,**<br><br>  -vs-<br><br>**BRENT H. GREENWALD, M.D., EASTERN IDAHO HEALTH SERVICES, INC. (a/k/a EASTERN IDAHO REGIONAL MEDICAL CENTER), an Idaho For Profit Corporation, and HCA HEALTHCARE, INC., a Delaware For Profit Corporation,**<br><br>    **Defendants.** | **Case No. 4:20-cv-440**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Charles A. Spencer and Toni A. Spencer, through counsel, for their causes of action against the defendants allege as follows:

## I.    INTRODUCTION

This wrong-site surgery action exemplifies recklessness and gross negligence by Dr. Greenwald, by the staff of Eastern Idaho Regional Medical Center ("EIRMC") and its administration and governing board, and the administration and governing board of HCA Healthcare, Inc. ("HCA") who have repeatedly seen, but ignored Dr. Greenwald's errors in medical judgment and surgical techniques for reasons of financial self-interest and in violation of the most fundamental principles of medical ethics.  Had Dr. Greenwald, EIRMC, or HCA been guided by those principles, Dr. Greenwald would never have been permitted to perform the unsupervised and unmonitored surgery that made Charles J. Spencer yet another Greenwald/EIRMC/HCA casualty.

## II.    PARTIES

1.    Plaintiff Charles J. Spencer is a citizen and resident of Deschutes County, Oregon and has been lawfully married to Toni A. Spencer at all times described in this Complaint.

2.    Plaintiff Toni A. Spencer is a citizen and resident of Deschutes County, Oregon and is the wife of Charles J. Spencer.

3.    At all times relevant hereto, defendant Brent H. Greenwald, M.D., has been a citizen and resident of Bonneville County, Idaho.

4.    Eastern Idaho Regional Medical Center (EIRMC) is a licensed acute care general hospital operating in the state of Idaho. Eastern Idaho Regional Medical Center is the fictitious name of a business that was originally incorporated as Idaho Falls Health Services, Inc., an Idaho corporation. Thereafter, Idaho Falls Health Services, Inc. merged with Eastern Idaho Health

Services, Inc., an Idaho corporation. At all times relevant hereto, Defendant Eastern Idaho Health Services, Inc., has been a citizen of Idaho.

5.     Eastern Idaho Regional Medical Center (Eastern Idaho Health Services, Inc.) is owned, operated, and controlled by Defendant HCA Healthcare, Inc. ("HCA"), a Delaware corporation. Within that parent corporation, Eastern Idaho Regional Medical Center is part of the Mountain Division.  HCA Healthcare, Inc., is not authorized to do business in the State of Idaho in spite of the fact that it receives substantial revenue from---and does substantial business through---its operation of Eastern Idaho Regional Medical Center. At all times relevant hereto, Defendant HCA Healthcare, Inc. has been a citizen of Delaware.

6.     Eastern Idaho Health Services, Inc., ("EIHSI/EIRMC") acts through its directors, officers, employees, and agents.  As the employer of those who set policy and who are involved with its business operations, EIHSI/EIRMC is vicariously liable for the acts and omissions of its directors, officers, employees, and agents acting within the course and scope of their employment.

7.     HCA acts through its directors, officers, employees, and agents.  As the employer of those who set policy and who are involved with its business operations, HCA is vicariously liable for the acts and omissions of its directors, officers, employees, and agents acting within the course and scope of their employment.

8.     Through its ownership, retained control of the policies, procedures, and actions of EIHSI/EIRMC, and right to control the policies, procedures, and actions of EIHSI/EIRMC, Defendant HCA owes duties of care to patients at EIRMC, including Mr. Spencer.

9.     Further, HCA governs and controls the policies, procedures, and actions of EIHSI/EIRMC and has a unity of ownership and financial interest with EIHSI/EIRMC as a consequence of the business relationships between the two such that HCA is the alter ego of

EIHSI/EIRMC.  Asserting that EIHSI/EIRMC is a separate entity would promote injustice or advance a fictional fraud.

10.     The overriding reason to apply the alter ego doctrine, however, is that to do otherwise would cause an inequitable result that would be contrary to public policy.  This case will demonstrate the dangers that arise from unreasonable adherence to principles of corporate separateness and peer review confidentiality.   While those principles have a theoretical justification, they can---in some instances---be extended beyond their intended purposes and be misused in an attempt to immunize responsibility for reckless misconduct that risks the safety of patients and the public.  The inequity and danger of that unreasonable adherence is particularly enhanced when the misconduct is rooted in financial reward.

11.     "The Buck Stops Here" is a simple and direct acknowledgement of the burden of responsibility and the justness of its allocation.  In this case---if one is to follow the flow of dollars as an indication of responsibility---substantial monies flowed to Dr. Greenwald.  But the larger stream passed through EIRMC to HCA's commercial complex at One Park Plaza, Nashville, Tennessee.  If the misconduct is to be stopped, all financial beneficiaries of the misconduct should be accountable.  Principles of corporate separateness and peer review confidentiality should not be inequitably applied to nullify the allocation of responsibility for the grave injuries inflicted upon Mr. Spencer.

### III.     JURISDICTION

12.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1).  There is complete diversity of citizenship between the plaintiffs (who are citizens of the State of Oregon) and the defendants (who are citizens of the State of Idaho and the State of Delaware or Tennessee).

13.     The matter in controversy is a medical negligence action and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00) per plaintiff, exclusive of interest and costs in conformity with the provisions of 28 U.S.C. §1332(a).

14.     This Court has personal jurisdiction over the defendants by virtue of the fact that the matters giving rise to this case occurred in Bonneville County, Idaho, Defendant Greenwald resides in such county, Defendant Eastern Idaho Health Services, Inc., is headquartered in such county, and Defendant HCA Healthcare, Inc., owns and controls  Defendant Eastern Idaho Health Services, Inc., and, in consequence, does substantial business in Idaho and was doing business in Idaho all times material to the facts herein.

15.     Plaintiffs have filed their Medical Malpractice Prelitigation Hearing Application and Claim with the Idaho Board of Medicine in accordance with the provisions of Idaho Code § 6-1001 in which each of the defendants was named as a respondent therein.  A hearing was held and the Report of Hearing Panel was issued on August 17, 2020.   Accordingly, plaintiffs have complied with the requirements of Idaho Code § 6-1001et seq.

## IV.     VENUE

16.     Venue of this action lies in this judicial district under 28 U.S.C. §1391(b)(2).  The matters giving rise to this case occurred in Bonneville County, Idaho.

## V.     FACTS

17.     Mr. Spencer is 73 years old---72 at the time of the Greenwald/EIRMC/HCA misconduct. He was seen by Dr. Greenwald on January 9, 2020 for a pre-operative visit.  The symptoms were "low back pain that goes into his hip, butt cheeks, groin, and down the back of his legs."  He noted that Mr. Spencer "will have an L12, L23 posterior lumbar interbody fusion and fixation [PLIF] on 01/14/20 at EIRMC."

18.     The surgery proceeded as scheduled---but not as stated.  Rather than operating on L1-2 and L2-3, Dr. Greenwald operated on---and fused--- T12-L1 and then L1-2.  When he realized what he had done, he then operated on---and fused---L2-3.

19.     At some time prior to the operation performed on Mr. Spencer, EIRMC and HCA abdicated their responsibility to patients by eliminating the critical safety procedure of requiring hospital personnel to verify that the surgeon will be operating at the proper site.  Those procedures, including a specific time-out assessment, are well-recognized safety procedures that should be enforced rather than abandoned.  EIRMC and HCA allowed Dr. Greenwald to perform his surgeries with his own employees rather than having hospital personnel as objective participants. Discovery will be undertaken to determine the reasons for that abdication, including whether Dr. Greenwald was motivated for financial reasons so that his business entity would be financially benefitted and for what reasons EIRMC and HCA permitted him to do so.

20.     In consequence, EIRMC and HCA---by their intentional actions---permitted Dr. Greenwald's profound error to be uncorrected, failing to have objective personnel present to intervene to prevent Dr. Greenwald from inflicting serious and unnecessary injury and damage to Mr. Spencer, including the failure to maintain and enforce policies to assure that wrong-site surgeries would not occur.  The result was not only that Dr. Greenwald had recklessly and unnecessarily fused two vertebrae (together with a removal of the intervertebral disc) but he also fused two of the three main sections of the spine together, sections that are meant to have independence and the ability to articulate separately from one another.

21.     Following the surgery, Mr. Spencer had abdominal pain, right thigh numbness to the knee, and numbness with pain into his right testicle.  He also developed a growing bulge in his right abdomen. He had to urinate more frequently and was not able to empty his bladder.  He has

suffered a total loss of sexual function. It is likely that Mr. Spencer has cauda equina syndrome, which is typically caused by a violent injury to the back. His immediate physical damage is expected to worsen. In addition to the issues he currently suffers from, he can expect back pain, further motor weakness, and sensory loss. His prognosis is poor. A revision surgery cannot be undertaken as it could lead to total paralysis. His damage is permanent and worsening.

22.    Following the surgery, Mr. Spencer talked to Dr. Greenwald---who told him that he had fused L1-2, L2-3, and L3-4. After being discharged from the hospital, the pain continued and Mr. Spencer sought medical help at Lost River Clinic and EIRMC.

23.    Mr. Spencer contacted Dr. Greenwald who referred him to a gastroenterologist (Dr. Hendrix)---who performed an esophagogastroduodenoscopy (EGD), a colonoscopy, and an ultrasound. These studies identified no abnormalities.

24.    Dr. Greenwald then referred Mr. Spencer to Dr. Lemon for a hernia consult---which was also negative. Dr. Lemon, however, was concerned about denervation of the abdominal musculature and referred Mr. Spencer to a neurosurgeon, Dr. Allen, for further care.

25.    The reckless misconduct of Dr. Greenwald included the following:

   a.  Preoperative imaging studies demonstrated significant degenerative disc disease with facet arthropathy at L1-2, L2-3, and L3-4. Dr. Greenwald neglected L3-4.

   b.  Preoperative imaging studies demonstrated that T12-L1 did not require surgical intervention. However, Dr. Greenwald excised the disc and fused the vertebrae.

   c.  Mr. Spencer's pre-surgical lordosis (inward curve of the lower back) has been transformed to kyphosis (the forward leaning of the back giving a hunchback appearance). He is now at risk for developing a flat back deformity.

    d.   The stenosis and degenerative changes at L3-4 were unaddressed and persist.

    e.   Operating on T12-L1 was unwarranted and unjustified---a manifestly reckless breach of the standard of care.  But to perform that surgery as a part of a posterior lumbar interbody fusion and fixation (PLIF) was inappropriate.  The conus medullaris is the tapered, lower end of the spinal cord before the spinal nerves comprising the cord branch out to form the cauda equina, named as such due to the horse tail appearance of the separate spinal nerves that emerge from the conus.  The level of conus is at the top of the lumbar spine.  A PLIF procedure at T12-L1 is associated with a greater risk of neurological damage from the excessive retraction at that level of the spine.

    f.   Dr. Greenwald damaged the spinal cord as a consequence of excessive retraction at the lower thoracic-upper lumbar spine, resulting in damage to the nerves that innervate the abdominal musculature, bladder and sexual function, musculature of the upper leg, and other functions.

    g.   The fusion is neither stable nor adequate.

    h.   Due to the fusion at the incorrect level, Mr. Spencer is at risk for breakdown and deterioration at adjacent levels of his spine.

26.    Events over the past years have demonstrated that Dr. Greenwald is himself a neurosurgical risk and in need of close supervision and monitoring if he is allowed to maintain surgical privileges.  Dr. Greenwald has persisted to practice in spite of his incapacities---and has refused to take those steps that might be ameliorative and that might promote patient safety.

27.    EIRMC has likewise failed to act to protect patients, has enabled Dr. Greenwald by permitting him to have continuing surgical privileges, and has failed even to take those steps that

would ensure that Dr. Greenwald was required to undertake proficiency training and education and to ensure that Dr. Greenwald was monitored, supervised, and counseled in his practice and his surgical procedures.

28.     In violation of hospital standards and ethics, EIRMC has enabled Dr. Greenwald's misconduct and his increasing casualties.

29.      Matters that should have caused both Dr. Greenwald, EIRMC, and HCA to adopt a different course---and to embrace patient safety instead of embracing monetary interests (including the financial benefit derived by all defendants from his surgeries at EIRMC)---include the following:

   a.   Dr. Greenwald is a neurosurgeon and, in consequence, his incapacities have a great risk of causing immense damage to patients, including brain damage, neurological damage, and death.  Great scrutiny is, therefore, required for such a physician.

   b.   A disturbing number of medical negligence claims involving significant damage to patients have been filed against Dr. Greenwald.

   c.   A disturbing number of peer review proceedings demonstrating Dr. Greenwald's incapacities have been conducted.

   d.   Neither Dr. Greenwald nor EIRMC has properly and objectively reviewed the claims, complaints, and peer review proceedings to determine the lesson and instruction to be derived from them---but, instead, both have refused to act on the facts and information that the claims, complaints, and proceedings revealed.

   e.   EIRMC and Dr. Greenwald have transmogrified the purpose of peer review protections to conceal Dr. Greenwald's incapacities and to conceal EIRMC's

own flaunting of professional ethics and standards so that its financial interests can be sustained.

f.   The concealment has included the failure to acknowledge Dr. Greenwald's incapacities, abuse of the purpose of peer review protections by active suppression of the information gleaned through the peer review process, and the violation of laws and regulations in reporting medical events to national and professional agencies by falsely portraying Dr. Greenwald's conduct, by falsely reporting the damage to the patient, and by falsely blaming others to deflect blame on Dr. Greenwald.

g.   EIRMC has engaged in these activities despite its knowledge that the peer review activities---and reporting to national and professional agencies---are intended to promote patient safety rather than to conceal a physician's incapacities and the dangers he poses to his patients and those of EIRMC.

30.   EIRMC and Dr. Greenwald engaged in this misconduct knowing that his errors had the risk of causing great harm to patients.

31.   HCA is equally to blame for these unworthy and dangerous circumstances.  HCA owns and operates EIRMC, controls the voting majority of EIRMC's board, and has the responsibility to know and control whether EIRMC is safely engaging in credentialing, peer review, and reporting to national and professional agencies through such means as its board control, its power to control the selection of EIRMC's officers, and its use of committees such as the HCA Audit and Compliance Committee and the HCA Patient Safety and Quality of Care Committee.

32.     The duties and responsibilities of HCA and EIRMC are underscored by the professed standards they espouse to the public in order to assure the public, patients, and potential patients they should utilize the services of HCA and EIRMC for the economic benefit of both HCA and EIRMC.  Those professed standards include the following from the HCA Healthcare Code of Conduct:

    a.   "We strive to deliver healthcare compassionately and to act with absolute integrity in the way we do our work and the way we live our lives."  Statement of CEO Sam Hazen introducing the Code of Conduct.

    b.   "Our Code of Conduct provides guidance to ensure our work is done in an ethical and legal manner."  Statement of CEO Sam Hazen introducing the Code of Conduct.

    c.   "We are committed to assuring our actions consistently reflect our words."  Statement of CEO Sam Hazen introducing the Code of Conduct.

    d.   "Above all else, we are committed to the care and improvement of human life."

    e.   "We treat all those we serve with compassion and kindness."

    f.   "We act with absolute honesty, integrity and fairness in the way we conduct our business and the way we live our lives."

    g.   "We have developed the Code to ensure we meet our ethical standards and comply with applicable laws and regulations."

    h.   "The standards set forth in the Code apply to all HCA Healthcare facilities and employees operating in the United States."

    i.   "We must never sacrifice ethical and compliant behavior in the pursuit of business objectives."

j. "We are committed to an environment in which compliance with rules, regulations, and sound business practices is woven into the corporate culture. We accept the responsibility to aggressively self-govern and monitor adherence to the requirements of law and to our Code of Conduct."

k. "[W]e are committed to the delivery of safe, effective, efficient, compassionate and satisfying patient care."

l. "In promoting a high quality of care, HCA Healthcare facilities are focused on the attentiveness and dedication of service to patients; the utilization of evolving technology to ensure quality and patient safety and to create an overall culture that makes patient safety paramount; a comprehensive and effective approach to handling the issues of credentialing and privileging of members of the medical staff; and the creation of effective peer review mechanisms within the medical staff."

33.    Dr. Greenwald negligently failed to provide appropriate care and treatment to Mr. Spencer as discussed herein.  His negligence violated the standard of care of the community in which such care was provided, as such standard existed at the time and place of the negligence of such healthcare providers and as such standard then and there existed with respect to the class of physicians that he then and there belonged to and in which capacity he was functioning.

34.    EIRMC negligently failed to provide appropriate care and treatment to Mr. Spencer as discussed herein and negligently failed to adopt and enforce appropriate protocols and procedures to have averted the circumstances that resulted in this tragedy. Discovery will be undertaken to determine what information EIRMC had regarding prior instances demonstrating improper care rendered by Dr. Greenwald that should have been alerting of the need for training,

monitoring, and supervision---or curtailment or termination of his privileges.  Discovery will also be undertaken regarding peer review proceedings, complaints, and the examination of those matters as well as Dr. Greenwald's medical malpractice cases---and what review and actions were undertaken by EIRMC in response thereto and what efforts it made to suppress truthful reporting to national and professional agencies.

35.     HCA Healthcare, Inc., negligently failed to provide appropriate care and treatment to Mr. Spencer as discussed herein, negligently failed to exercise its retained control over EIRMC, and negligently failed to adopt and enforce appropriate protocols and procedures to have averted the circumstances that resulted in this tragedy. Discovery will be undertaken to determine what information HCA had regarding prior instances demonstrating improper care rendered by Dr. Greenwald that should have been alerting of the need for training, monitoring, and supervision--- or curtailment or termination of his privileges.  Discovery will also be undertaken regarding peer review proceedings, complaints, and the examination of those matters as well as Dr. Greenwald's medical malpractice cases---and what review and actions were undertaken by HCA in response thereto, what efforts it made to suppress truthful reporting to national and professional agencies, and what efforts it made to enforce safe practices at EIRMC.

36.     In providing healthcare and physician services to Mr. Spencer, Dr. Greenwald and EIRMC negligently violated and negligently failed to meet the applicable standard of healthcare practice as described in I.C. § 6-1012 and as applied in Buck v. St. Clair, 108 Idaho 743, 745, 702 P.2d 781, 783 (1985), disavowed on other grounds by Grimes v. Green, 113 Idaho 519, 746 P.2d 978 (1987), Samples v. Hanson, 161 Idaho 179, 184, 384 P.3d 943, 948 (2016), and Phillips v. Eastern Idaho Regional Medical Center, et al., No. 45890, 2020 WL 1164508 * 11 (Idaho Supreme Court March 11, 2020).  As a physician certified by a national specialty board, Dr. Greenwald is

held to a national standard of care---a standard of care he violated.  Likewise, to the extent nurses

or healthcare providers employed by EIRMC were certified by a national specialty board, those

nurses and healthcare providers were held to a national standard of care and—to the extent their

care and treatment of Mr. Spencer violated that standard, EIRMC is vicariously liable for their

negligent misconduct based upon that standard.

37.     To the extent care and treatment was provided to Mr. Spencer by nurses or other

healthcare works who were not certified by a national specialty board, their liability (and the

vicarious liability of EIRMC/HCA) would be based on the standard of care of the community in

which such care was provided, as such standard existed at the time and place of the negligence of

such non-certified nurses and healthcare providers and as such standard then and there existed with

respect to the class of nurse or healthcare provider that each such then and there belonged to and

in which capacity she or he was functioning.

38.     Plaintiffs reserve the right to amend the complaint at some future time for the

recovery of punitive and exemplary damages pursuant to Idaho Code § 6-1604.

## VI.     FIRST CLAIM FOR RELIEF: NEGLIGENCE OF DEFENDANT BRENT H. GREENWALD, M.D. (CLAIM OF MR. SPENCER)

39.     Plaintiffs hereby incorporate all statements and allegations contained in paragraphs

1 through 38 above as if fully set forth herein.

40.     Dr. Greenwald owed duties of reasonable care to his medical patients, including

Mr. Spencer, to provide appropriate and safe medical care and treatment.

41.     Dr. Greenwald was negligent in the care and treatment he provided to Mr. Spencer

and such negligence, falling below the applicable standard of care, breached the duties of care Dr.

Greenwald owed to Mr. Spencer. Dr. Greenwald negligently violated and negligently failed to

meet the applicable standard of healthcare practice of the community in which such care was provided as such standard existed at the time and place of the negligence of Dr. Greenwald and as such standard then and there existed with respect to the class of healthcare provider to which Dr. Greenwald then and there belonged and in which capacity he was functioning.  Dr. Greenwald violated the standard of care applicable to board certified neurosurgeons. The physician services violated that standard of care as described in Idaho Code § 6-1012.

42.     As a proximate and direct result of the negligent acts and omissions of Dr. Greenwald, Mr. Spencer was severely injured and suffered damages as more specifically detailed in that section of this Complaint denominated as "Damages."

## VII.   SECOND CLAIM FOR RELIEF: NEGLIGENCE OF DEFENDANT BRENT H. GREENWALD, M.D. (CONSORTIUM CLAIM OF MRS. SPENCER)

43.     Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 42 above as if fully set forth herein.

44.     Dr. Greenwald owed duties to Mrs. Spencer to use reasonable care to avoid wrongfully interfering with the marital relationship between Mr. and Mrs. Spencer.

45.     Dr. Greenwald was negligent in the care and treatment he provided to Mr. Spencer as described in the First Claim for Relief.  In so doing, Dr. Greenwald negligently interfered with the marital relationship between Mr. and Mrs. Spencer, depriving Mrs. Spencer of her husband's care, comfort, society, companionship, support, services, and otherwise altering the marital relationship to which she was entitled.

46.      As a proximate and direct result of the negligent acts and omissions of Dr. Greenwald, Mrs. Spencer has been injured and suffered damages as more specifically detailed in that section of this Complaint denominated as "Damages."

### VIII.   THIRD CLAIM FOR RELIEF: NEGLIGENCE OF DEFENDANT EASTERN IDAHO HEALTH SERVICES, INC. (CLAIM OF MR. SPENCER)

47.     Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

48.     Defendant Eastern Idaho Health Services, Inc, ("EIHSI"), owed duties of reasonable care to its medical patients, including Mr. Spencer, to provide appropriate and safe medical care and to adopt and to enforce appropriate protocols and procedures that would have adverted the circumstances that resulted in the tragedy as discussed herein.

49.     Defendant EIHSI (acting through its officers, directors, employees, and agents) was negligent in the care and treatment it provided to Mr. Spencer and such negligence, falling below the applicable standard of care, breached the duties of care it owed to Mr. Spencer.  The officers, directors, employees, and agents of EIHSI negligently violated and negligently failed to meet the applicable standard of healthcare practice of the community in which such care was provided as such standard existed at the time and place of the negligence of the hospital and as such standard then and there existed with respect to such class of health care providers to which it belonged and in which capacity it was functioning.  The healthcare services violated that standard of care as described in Idaho Code § 6-1012.

50.     As a proximate and direct result of the negligent acts and omissions of Defendant EIHSI, Mr. Spencer was severely injured and suffered damages as more specifically detailed in that section of this Complaint denominated as "Damages."

### IX.     FOURTH CLAIM FOR RELIEF: NEGLIGENCE OF DEFENDANT EASTERN IDAHO HEALTH SERVICES, INC. (CONSORTIUM CLAIM OF MRS. SPENCER)

51.     Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 50 above as if fully set forth herein.

52.     Defendant EIHSI owed duties to Mrs. Spencer to use reasonable care to avoid wrongfully interfering with the marital relationship between Mr. and Mrs. Spencer.

53.     Defendant EIHSI was negligent in the care and treatment it provided to Mr. Spencer as described in the Third Claim for Relief.  In so doing, Defendant EIHSI negligently interfered with the marital relationship between Mr. and Mrs. Spencer, depriving Mrs. Spencer of her husband's care, comfort, society, companionship, support, services, and otherwise altering the marital relationship to which she was entitled.

54.      As a proximate and direct result of the negligent acts and omissions of Defendant EIHSI, Mrs. Spencer has been injured and suffered damages as more specifically detailed in that section of this Complaint denominated as "Damages."

## X.     FIFTH CLAIM FOR RELIEF: NEGLIGENCE OF DEFENDANT HCA HEALTHCARE, INC. (CLAIM OF MR. SPENCER)

55.     Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendant HCA Healthcare, Inc. ("HCA"), owed duties of reasonable care to Mr. Spencer and those duties were breached by the negligent misconduct of HCA.

57.     The injuries sustained by Mr. Spencer were proximately caused by the negligent misconduct of HCA.

58.     As a proximate and direct result of the negligent acts and omissions of Defendant HCA, Mr. Spencer was severely injured and suffered damages as more specifically detailed in that section of this Complaint denominated as "Damages."

## XI.     SIXTH CLAIM FOR RELIEF: NEGLIGENCE OF DEFENDANT
## HCA HEALTHCARE, INC.
## (CONSORTIUM CLAIM OF MRS. SPENCER)

59.     Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

60.     Defendant HCA owed duties to Mrs. Spencer to use reasonable care to avoid wrongfully interfering with the marital relationship between Mr. and Mrs. Spencer.

61.     Defendant HCA negligently breached the duties of care it owed to Mr. Spencer as described in the Fifth Claim for Relief.  In so doing, Defendant EIHSI negligently interfered with the marital relationship between Mr. and Mrs. Spencer, depriving Mrs. Spencer of her husband's care, comfort, society, companionship, support, services, and otherwise altering the marital relationship to which she was entitled.

62.      As a proximate and direct result of the negligent acts and omissions of Defendant HCA, Mrs. Spencer has been injured and suffered damages as more specifically detailed in that section of this Complaint denominated as "Damages."

## XII.     DAMAGES

63.     Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 62 above as if fully set forth herein.

64.     As a direct and proximate result of the negligence and misconduct of the defendants, Mr. Spencer sustained damage and is entitled to recover the following damages:

a.   Physical pain and suffering in an amount to be proven at trial.

b.   Emotional pain and suffering in an amount to be proven at trial.

c.   Loss of enjoyment of life in an amount to be proven at trial.

d.   Loss of earnings and earning capacity in an amount to be proven at trial.

e.  Medical and related expenses in an amount to be proven at trial.

f.  All other damages as allowed in an amount to be proven at trial.

65.  As a direct and proximate result of Mr. Brown's negligence and misconduct of the defendants, Mrs. Spencer has been damaged, including as follows:

a.  Past and future loss of society in an amount to be proven at trial.

b.  Past and future loss of companionship in an amount to be proven at trial.

c.  Past and future loss of services in an amount to be proven at trial.

d.  The value of Mrs. Spencer's services as have been required, and will be required in the future, to assist and care for her husband in consequence of the injuries inflicted on him by the defendants---in an amount to be proven at trial.

e.  All other damages as allowed in an amount to be proven at trial.

WHEREFORE, Mr. and Mrs. Spencer respectfully pray that the Court enter judgment against the defendants in an amount as supported by the allegations of this Complaint, together with interest and costs, and for such other and further relief as the Court deems just and equitable.

DATED this 17th day of September, 2020.

By: _____
Dennis P. Wilkinson
SMITH WOOLF ANDERSON
& WILKINSON, PLLC
3480 Merlin Drive
Idaho Falls, Idaho 83404
Telephone: 208.525.8792
dennis@eastidaholaw.net

Robert P. Schuster
Bradley L. Booke
*Pro Hac Vice* Applicants
ROBERT P. SCHUSTER, P.C.
250 Veronica Lane, Suite 204
P.O. Box 13160

Jackson, Wyoming 83002
Telephone: 1.307.732.7800
Facsimile:  1.307.732.7801
bob@bobschuster.com
brad@bobschuster.com

Gary L. Shockey
*Pro Hac Vice* Applicants
GARY L. SHOCKEY, P.C.
951 Werner Court, Suite 340
Casper, Wyoming 82609
Telephone: 1.307.699.8060
gary@garyshockeylaw.com
*Attorneys for Plaintiffs*

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand that all issues regarding all claims for relief above be tried by a jury.

Dated: September 17, 2020.

By: _____
Dennis P. Wilkinson