| | | |
|---|---|---|
| Robert P. Schuster<br>Idaho Bar No. 11382<br>Bradley L. Booke<br>Idaho Bar No. 11466<br>Robert P. Schuster, P.C.<br>P.O. Box 13160<br>Jackson, Wyoming 83002<br>Telephone: 1.307.732.7800<br>bob@bobschuster.com<br>brad@bobschuster.com | Dennis P. Wilkinson<br>Idaho Bar No. 6023<br>Smith Woolf Anderson &<br>Wilkinson<br>3480 Merlin Drive<br>Idaho Falls, Idaho 83404<br>Telephone: 1.208.525.8792<br>dennis@eastidaholaw.net | Gary L. Shockey<br>Wyoming Bar 5-1538<br>*Pro Hac Vice*<br>951 Werner Court #340<br>Casper, Wyoming 82609<br>307-699-8060<br>gary@garyshockeylaw.com |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHARLES J. SPENCER and TONI A. SPENCER,<br><br>        Plaintiffs,<br><br>  -v-<br><br>BRENT H. GREENWALD, M.D., EASTERN IDAHO HEALTH SERVICES, INC. (a/k/a EASTERN IDAHO REGIONAL MEDICAL CENTER), an Idaho For Profit Corporation, and HCA HEALTHCARE, INC., a Delaware For Profit Corporation,<br><br>        Defendants. | **Civil Action No. 4:20-cv-00440-DCN**<br><br>PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH (ECF No. 64) |

Defendants' motion asks the Court to allow them to conceal "spy films" they have created to attack Plaintiff's injury claims and credibility at trial. The motion lacks factual merit and legal authority for several reasons. Private eye/videographer McDonald is not an expert witness---this is not a videography case. McDonald is not Defendants' counsel's client---no attorney-client relationship or privilege exists. The surreptitious videos are simply evidence created by Defendants to try to prove that Mr. Spencer was not injured by their medical negligence. Such evidence is discoverable in its entirety.

### A. INTRODUCTION

This is a medical negligence case. Defendant Dr. Greenwald performed a wrong-site fusion surgery on 72-year-old Charles Spencer's spine---unnecessarily fusing two healthy vertebrae and then lying to Mr. Spencer about what he had done.

In their initial discovery requests (served on March 30, 2021), the Spencers specifically requested evidence of any surveillance conducted on them, including "(a) all contract, agreements, memoranda, or other documents that reflect any such hiring, retention, or engagement; (b) all letters, memoranda, notes, emails, reports, or photo or film logs to or from any such individuals, agencies, companies, or entities; (c) any notes or records made at the time of any such photographing or filming, or other notes, emails, or other documents that described or memorialized any such photographing or filming; (d) any reports or summaries of any such photographing or filming; (e) all photographs and film taken at any time (including all outtakes)," and the films themselves in digital format. See Exhibit 1 at 14; Exhibit 2 at 11.

In response, EIRMC made objections and stated that no such materials existed. See Exhibit 3, at 26. Then, for several days in mid-September 2021, Defendant's private eye videotaped Mr. Spencer outside his Oregon home. See Exhibit 4, at 10. Even though discovery requests are continuing in nature under Fed. R. Civ. P. 26(e)---it was not until Plaintiffs' counsel alerted defense counsel that they suspected the Defendants had conducted surveillance that Defendant supplemented their responses---and then, only with incomplete and edited video footage.

Plaintiffs' counsel undertook appropriate measures to obtain compliance by the Defendants with the interrogatories and document requests that had been served in March. Plaintiffs' counsel became concerned that surveillance had been undertaken during the questioning of Mr. Spencer in his deposition of November 16, 2021. The concerns were raised with defense counsel at the time.

They were noncommittal. What followed was a string of emails from November 19 through December 22, 2021, as well as first and second supplemental discovery responses, that still resulted in incomplete production.

In addition to the discovery served on the Defendants in March, Plaintiffs also commenced third party discovery against McDonald after they were informed of the spy company's name. On December 9, 2021, Plaintiffs filed their Notice of Intent to Serve Subpoena (ECF No. 61) as required by Rule 45, F.R.C.P. The Rule requires notice---which was provided. It does not require a meet and confer process.

### B. ANALYSIS

Rule 45 of the Federal Rules of Civil Procedure govern subpoenas, and it is generally recognized that "[a] Rule 45 subpoena is the proper and only method to conduct discovery of a nonparty." *Landry v. Swire Oilfield Servs., L.L.C.,* 323 F.R.D. 360, 397–98 (D.N.M. 2018). To quash a subpoena, Rule 45 requires movants to file a timely motion that establishes one of four grounds for quashing, namely: (1) failure to allow a reasonable time to comply; (2) requires excess travel; (3) requires disclosure of privileged or other protected information; or (4) creates an undue burden. Fed. R. Civ. P 45(d)(3)(A). The burden of establishing grounds for quashing the subpoena rests with the moving party. *Morales v. E.D. Etnyre & Co.*, 228 F.R.D. 694, 696 (D.N.M. 2005).

It is well settled that the scope of discovery of a subpoena is the same as the scope of discovery under Rule 26(b) of the Federal Rules of Civil Procedure. *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003). Pursuant to Rule 26 of the Federal Rules of Civil Procedure, parties to a lawsuit "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

3

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The purpose of the rule is to allow broad discovery of relevant information, even if that information is not admissible at trial. *Id.* The broad reach of discovery permitted under Rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 649–50 (D.N.M. 2007) (quotations and citations omitted). In addition, and as emphasized by controlling precedent, a trial court has broad discretion in fashioning the terms and conditions of discovery. *Marsee v. U.S. Tobacco Co.*, 866 F.2d 319, 322 (10th Cir. 1989).

     Defendants' sole argument is that the subpoena requires disclosure of privileged materials even though their motion admits that "some of the documents sought in the Subpoena might be relevant and discoverable in this case."[1] ECF No. 64-1 at 6. Although Defendants contend that "other documents or items sought" are "subject to work product, attorney-client privilege, or objection/protection under Fed. R. Civ. P. 26(b)(4)(B)-(C)," their motion fails to explain which items fall into which categories and it provides no authority for their attorney-client privilege and work product claims. Thus, Defendants' argument is reduced to a claim that Plaintiffs served a subpoena *duces tecum* without an accompanying subpoena *ad testificandum*. That procedural

---

[1] In a *non-sequitur*, Defendants appear to argue that the subpoena creates an undue burden because it deprived them of an opportunity to file a prior discovery motion. Discovery motion practice bears no relation to the "burden" of producing documents, and Defendants *are* being heard—in this motion. Had Defendants wanted an alternative mechanism resolution, they could and should have accepted Plaintiffs' counsel's invitation to meet and confer.

complaint is unavailing, however, because McDonald's testimony is neither necessary nor useful and would be wasteful---the documents sought are all that is needed to satisfy the subpoena.

1. **McDonald is not an "expert" under Rule 26, Rule 702, or Rule 703.**

Defendants' motion abandons their original objection: that the Spencers' discovery violated Fed. R. Civ. P. 26(b)(4)(D) which protects experts employed for trial preparation. See Exhibit 3 at 60-61. Having switched horses mid-stream, Defendants *now* argue that McDonald *could* testify at trial, therefore Rule 26(b)(4)(B) protects drafts of expert reports and Rule 26(b)(4)(C) protects communications between expert witnesses and attorneys. See ECF No. 64-1 at 2.

Defendants' argument is inapposite. The draft reports and communications rules relate only to expert witnesses as contemplated by Fed. R. Evid. 702, 703, and 705; a witness "specially employed to provide expert testimony in the case"; or a witness "whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(A)-(C). McDonald is none of these. McDonald was hired to shoot spy films, not to give expert testimony. This is a medical negligence case and McDonald is not a medical expert. The only matter about which McDonald or his delegees could *conceivably* testify is the foundation for the spy films. Those are percipient facts, not expert opinions. Shooting spy films does not convert videographers into medical experts whose "knowledge skill, experience, training, or education" qualify them to testify to opinions in a medical negligence case. F.R.E. 702. Neither is McDonald specially or regularly employed by the Defendant to provide expert medical testimony. Fed. R. Civ. P. 26(a)(2)(A)-(C). At most, McDonald has created documents and videotapes for use as trial exhibits, which are fully discoverable under Rule 26(b)(1). Fed. R. Civ. P. 26(b)(3)(A).

 2. **Privilege**

Defendants' sole privilege argument is a bald claim that some of the documents sought are subject to attorney-client privilege and/or Fed. R. Civ. P. 26(b)(4)(B)-(C). ECF No. 64-1 at 6. For the same reasons Fed. R. Civ. P. 26(b)(4)(B) does not apply, Fed. R. Civ. P. 26(b)(4)(C) does not apply. McDonald is not defense counsel's client and spy films are not attorney-client communications.

Defendants cite no specific authority regarding privilege and Defendants' privilege log falls far short of what Rule 26(b)(5)(A) requires for assertion of attorney-client privilege. The rule requires a description of "the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected will enable other parties to assess the claim." Defendants' "privilege log" says simply "Emails between counsel for EIRMC and McDonald & Associates regarding Charles Spencer" and cites Fed. R. Civ. P. 26(b)(4)(C). That is not a description of the nature of the documents or communications in a manner that enables the Spencers to assess the claim of privilege.

Moreover, the claim of attorney-client privilege is futile in the first instance. "The attorney-client-privilege protects confidential communications between attorneys and their clients that are made for the purpose of giving legal advice." *Mfg. Automation & Software Sys. v. Hughes*, No. CV 16-8962-CAS (KS), 2017 U.S. Dist. LEXIS 235846, at *20-21 (C.D. Cal. Dec. 1, 2017) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege protects: "(1) legal advice (2) from a legal professional acting in his or her capacity as such, (3) where the communications relate to that purpose and (4) are made in confidence, (6) unless the protection is waived." *Id.* (citing *United States v. Graf*, 610 F.3d 1146, 1156 (9th Cir. 2010)). The privilege may extend to an attorney's communications with a third party, engaged to assist him in providing

legal advice. *Id.* "Where the advice sought is *not legal advice*, however, then the privilege does not exist." *Id.* (citing *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)).

Defendants do not even suggest that any of the communications between Defendants' counsel and McDonald consisted of legal advice. It is Defendants' burden to demonstrate the privileged nature of the communication. *Id.* (citing *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (quoting *Weil*, 647 F.2d at 24). Defendants' communications requesting that a private eye film a plaintiff are not communications between attorney and client and they give no legal advice to the private eye. Therefore, Defendants have not met their burden of demonstrating that the documents sought are privileged.[2]

### 3. Work Product

Just as the subpoenaed documents are not attorney-client communications, neither are they attorney work product. The work product doctrine protects materials containing attorneys' 'thought processes, legal recommendations, and strategy.'" *Mfg. Automation & Software Sys.*, at *19 (quoting *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992)). The doctrine does *not* protect against "facts or facts contained within work product." *Id.* (citing *Garcia v. City of El Centro*, 214 F.R.D. [587,] 591 [(S.D. Cal. 2003)]). A party may assert the work product privilege only after establishing that the materials are: "(1) documents and tangible things;

---

[2] Defendants also do not suggest, nor could they, that a special type of privilege exists between an attorney and a private investigator. "The [federal] common law has never recognized a private investigator's privilege. Nor should it." *Ubiquiti Networks, Inc. v. Kozumi United States Corp.*, 981 F. Supp. 2d 1207, 1209 (N.D. Fla. 2013). This case involves state law claims, however, Idaho law does not recognize an investigator's privilege—the relevant rules mirror the federal rules—therefore the federal courts' reasoning would apply were Defendants to argue an investigator's privilege existed under Idaho law. *See* I.R.C.P. Rule 26; I.R.E. 502.

(2) prepared in anticipation of litigation or for trial; and (3) the documents or tangible things were prepared by or for the party of the attorney asserting the privilege." *Id.*, at *20 (citing Fed. R. Civ. P. 26(b)(3)). Defendants have failed entirely to establish any of these required elements, but even if they had, the items remain discoverable where there is "substantial need for the material and that the party 'is unable without undue hardship to obtain the substantial equivalent of the materials by an alternative method.'" *Id.* (quoting *Garcia*, 214 F.3.D. at 591).

The Spencers have a substantial need to determine whether Defendants instructed McDonald to take spy films that selectively present Mr. Spencer's condition or to edit the spy films taken so as to accomplish that *de facto* result. There is good reason for suspicion---the videos thus far produced, compared with the pain and suffering Mr. Spencer experiences daily, indicate that this has likely occurred. It is one thing if the McDonald videos recorded only a portion of Mr. Spencer's movements. It is an entirely different situation if McDonald was instructed to shoot or edit video in such a way that only certain of Mr. Spencer's movements are presented, thereby purposefully causing bias in the resulting film.[3]

Any instructions to McDonald have particular importance because the Defendants provided the edited spy films to at least two (2) of their expert witnesses---Dr. Rodde D. Cox (a physiatrist in Boise); Dr. Mary Barros-Bailey (a lifecare planner in Boise). Both of them examined Mr. Spencer; both of them were provided the edited video before the examinations; neither of them informed Mr. Spencer that they had reviewed the video. To the extent there are emails or other documents that provide "guidance" for those conducting the spy films, that guidance could then be replicated in the reports of the experts. The issue before the Court is one of discovery of

---

[3] Purposeful bias would bar assertion of the work-product doctrine. *See Chevron Corp. v. Salazar*, 275 F.R.D. 437, 451 (S.D.N.Y. 2011).

documents rather than admissibility of documents. It is appropriate for the documents to be produced to determine what directions, if any, were provided to those conducting the spy films.

The Spencers can only *reliably* obtain the instructions given to McDonald from one source: the written instructions themselves, in whatever manner the instructions were transmitted and/or documented. The Spencers requested these instructions and defense counsel declined to discuss their reasons for withholding them. For these reasons, the Spencers understandably turned to Rule 45 and to the receiving party to obtain these non-privileged communications.

Moreover, Defendants' instructions to McDonald to shoot video do not contain counsel's "thought processes, legal recommendations, and strategy." Even if they did, such portions could be redacted and/or reviewed *in camera* if Defendant had so requested.[4] However, no redaction or review is called for when, as here, Defendants have refused to provide any basis or explanation for applying the work product doctrine.

**4. The Marsh argument**

The bulk of Defendants' challenge is based on *Marsh v. Jackson* and rests on the inaccurate insinuation that McDonald is an expert witness. See supra. *Marsh* and the cases that follow concern experts retained to provide opinions, not, as here, to create trial exhibits. *See* 141 F.R.D. 431, 432-33 (W.D. Va. 1992); *Westchester Surplus Lines Ins. Co. v. Interstate Underground Warehouse & Storage, Inc.*, No. 16-00136-CV-W-HFS, 2017 U.S. Dist. LEXIS 136071, at *3 (W.D. Mo. May 18, 2017) (discussing subpoena of "retained expert, Paul. L. Hilpman, Ph.D"); *Morriss v. BNSF Ry. Co.*, No. 8:13CV24, 2014 U.S. Dist. LEXIS 3757, at *17-19 (D. Neb. Jan. 13, 2014) (discussing consulting and retained experts); *Greer v. Anglemeyer*, CAUSE NO. 3:93-

---

[4] It is no secret that Defendants' legal strategy is to undermine Mr. Spencer's claim for damages by showing he is capable of performing manual labor—there could be no other reason to create a spy film.

9

cv-649RP, 1996 U.S. Dist. LEXIS 1429, at *3, 7 (N.D. Ind. Jan. 5, 1996) ("Dr. Land, who has been retained as an expert witness and expected to testify . . . ."); *Hartford Fire Ins. Co. v. Pure Air on the Lake, Ltd. P'ship*, 154 F.R.D. 202, 204, 208 (N.D. Ind. 1993) (granting motion to quash because the "alleged expert" was not the sole source of facts and opinions on the dispositive issue).

Even if this Court were to deem McDonald to be an expert witness, the *Marsh* line of cases is no more than a procedural gripe without meaningful impact. These cases stand for the proposition that if a party serves a third-party subpoena for documents to an expert witness, the party must also depose that witness. *Marsh*, 141 F.R.D. at 433 ("In conjunction with that deposition, the expert might be served also with a Rule 45 subpoena duces tecum . . . ."). Here, however, McDonald is not an expert witness, and a deposition of McDonald's investigators may be unnecessary. That is a matter to be determined after the documents are produced.

### 5. Meet and confer

The remainder of Defendants' argument centers on the false allegation that Plaintiffs' counsel failed to meet and confer before issuing the subpoenas. ECF No. 64-1 at 7. Counsel engaged in meet and confer discussions for more than a month between November 16 and December 20, 2021---and the production was still incomplete.

Regardless, Defendants' refusal to timely comply with a discovery request is one matter and a third-party subpoena is another. There is no predicate meet and confer requirement for service of third-party subpoenas such as exists for motions to compel. Further, Defendants had actual notice that the Spencers were seeking the subpoenaed information because it was expressly enumerated in their initial discovery requests in March, 2021. Defendants have had ample time to articulate their objections and support them with authority. They failed to do so in that eight-month period, and they fail to do so in this motion.

## C. CONCLUSION

For these reasons, Plaintiffs respectfully request that Defendants' motion be denied.

Dated: January 18, 2022.

By: /s/ Robert P. Schuster
Robert P. Schuster
Bradley L. Booke
Robert P. Schuster, P.C.
250 Veronica Lane, Suite 204
P.O. Box 13160
Jackson, Wyoming 83002
Telephone: 1.307.732.7800
Facsimile: 1.307.732.7801
bob@bobschuster.com
brad@bobschuster.com

Dennis P. Wilkinson
Smith Woolf Anderson & Wilkinson
3480 Merlin Drive
Idaho Falls, Idaho 83404
Telephone: 1.208.525-8792
dennis@eastidaholaw.net

Gary L. Shockey *(Pro Hac Vice)*
Gary L. Shockey, P.C.
951 Werner Court, Suite 340
Casper, Wyoming 82609
Telephone: 1.307.699.8060
gary@garyshockeylaw.com
*Attorneys for Plaintiffs*

11

## CERTIFICATE OF SERVICE

      I hereby certify that on the 18th day of January, 2022, a true and correct copy of the foregoing was served in the manner indicated below:

| | | |
|---|---|---|
| Marvin M. Smith<br>Marvin K. Smith<br>Hawley Troxell Ennis & Hawley LLP<br>2010 Jennie Drive<br>Idaho Falls, Idaho 83404<br>mmsmith@hawleytroxell.com<br>mksmith@hawleytroxell.com<br>*Attorneys for Defendants* | [ ]<br>[ ]<br>[ ]<br>[ ]<br>[ ]<br>[X] | U.S. Mail, Postage Prepaid<br>Express Mail<br>Hand Delivery<br>Fax Transmission<br>Federal Express<br>Electronic Transmission |
| J. Michael Wheiler<br>Richard R. Friess<br>THOMSEN HOLMAN WHEILER, PLLC<br>1000 Riverwalk Drive, Ste 300<br>Idaho Falls, ID 83402<br>wheiler@thwlaw.com<br>friess@thwlaw.com<br>Telephone: 1.208.522.1230 | [ ]<br>[ ]<br>[ ]<br>[ ]<br>[ ]<br>[X] | U.S. Mail, Postage Prepaid<br>Express Mail<br>Hand Delivery<br>Fax Transmission<br>Federal Express<br>Electronic Transmission |

/s/ Robert P. Schuster
Robert P. Schuster